**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| BROOKLYN BEDDING, LLC ET AL., )<br><br>*Plaintiffs*, )<br><br>v. )<br><br>UNITED STATES, )<br><br>*Defendant,* )<br>and )<br><br>PT ECOS JAYA INDONESIA AND PT GRANTEC )<br>JAYA INDONESIA, )<br><br>*Defendant-Intervenors*. )<br> ) | Consol. Ct. No. 24-00002 |

**<u>ORDER</u>**

Upon consideration of the Rule 56.2 Motion for Judgement upon the Agency Record, and supporting Memorandum of Law, filed by Brooklyn Bedding, LLC, Corsicana Mattress Company, FXI, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, (hereinafter, "Plaintiffs" or "Petitioners"), and all other papers and proceedings had herein, it is hereby:

ORDERED that Petitioners' Motion for Judgement Upon the Agency Record is granted, and it is further

ORDERED that the U.S. Department of Commerce's ("the Department") final results of administrative review are remanded for the agency to revise its determination with respect to:

1. The Department's determination that respondents' tri-folding mattresses satisfied the requirements of the mattress topper exclusion; and

2. The Department's determination that respondents' foam mattress floor sofas satisfied the requirements of the multifunctional furniture exclusion.

Date:_____          Signed:_____
         New York, NY                                            Jennifer Choe-Groves

**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE:  THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| BROOKLYN BEDDING, LLC ET AL., | ) |
| | ) |
| *Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | ) |
| *Defendant,* | ) |
| and | ) |
| | ) |
| PT ECOS JAYA INDONESIA AND PT GRANTEC | ) |
| JAYA INDONESIA, | ) |
| | ) |
| *Defendant-Intervenors*. | ) |

Consol. Ct. No. 24-00002

<u>**BROOKLYN BEDDING, LLC ET AL's**</u>
<u>**MOTION FOR JUDGMENT ON THE AGENCY RECORD**</u>

Pursuant to Rule 56.2 of the Rules of the U.S. Court of International Trade (the "Court" or "CIT"), Brooklyn Bedding, LLC, Corsicana Mattress Company, FXI, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, (hereinafter, "Plaintiffs" or "Petitioners") respectfully moves this Court for an order granting movant's judgement on the agency record.  For the reasons set forth in the accompanying brief, Brooklyn Bedding, LLC *et al*. request that this Court hold that the final determination by the U.S. Department of Commerce, as set forth in *Mattresses From Indonesia: Final Results of Antidumping Duty Administrative Review; 2020-2022*, 88 Fed. Reg. 85240 (Dec. 7, 2023) is unsupported by substantial evidence on the administrative record and

otherwise not in accordance with the law, and that the Court therefore remand this final

determination to Commerce for disposition in a manner consistent with the judgment of the

Court.

Respectfully Submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Chase J. Dunn
Nicole Brunda

CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
(202) 567-2300

*Counsel to Brooklyn Bedding, LLC, Corsicana Mattress Company, FXI, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO*

Dated:   May 20, 2024

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE: THE HONORABLE JENNIFER CHOE-GROVES, JUDGE**

| | |
|---|---|
| BROOKLYN BEDDING, LLC ET AL., ) | |
| ) | |
| *Plaintiffs*, ) | Consolidated Court. No. 24-00002 |
| ) | |
| v. ) | **NON-CONFIDENTIAL** |
| ) | **VERSION** |
| UNITED STATES, ) | |
| ) | |
| *Defendant*, ) | |
| ) | Business Proprietary Information |
| and ) | Removed from Brackets on Pages |
| ) | 14 and 18. |
| PT ECOS JAYA INDONESIA AND PT GRANTEC ) | |
| JAYA INDONESIA, ) | |
| ) | |
| *Defendant-Intervenors*. ) | |

**MEMORANDUM OF POINTS OF LAW AND FACT IN SUPPORT OF PLAINTIFFS'**
**RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD**

Yohai Baisburd
Chase J. Dunn
Nicole Brunda

CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
 (202) 567-2300

*Counsel to Brooklyn Bedding, LLC, Corsicana Mattress Company, FXI, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO*

Date:   May 20, 2024

**Table of Contents**

**Page**

I.   STATEMENT PURSUANT TO RULE 56.2 ................................................................. 1

    A.   Administrative Determination Under Review ................................................. 1

    B.   Issues Presented for Review ........................................................................... 2

    C.   Request for Relief ........................................................................................... 2

II.  STATEMENT OF THE FACTS ......................................................................... 2

III. SUMMARY OF THE ARGUMENT ................................................................. 7

IV.  STANDARD OF REVIEW ............................................................................... 8

V.   ARGUMENT ..................................................................................................... 9

    A.   Tri-Folding Mattresses Are Not Mattress Toppers, And The Department's
         Determination To The Contrary Is Not Supported By Substantial Evidence ................. 9

        1.   The Department Previously Found Tri-Folding Mattresses to be In-
             Scope Merchandise During the Underlying Investigation ................................... 10

        2.   Mattresses that are Portable and Foldable are Still Mattresses ........................... 12

        3.   Ecos/Grantec's Inconsistent Product Labeling Does Not Support
             Finding its Tri-Folding Mattresses Satisfy the Requirements of the
             Mattress Topper Exclusion .................................................................... 16

        4.   Ecos/Grantec's Tri-Folding Mattresses Are Not Produced To
             Traditional Mattress Sizes, Demonstrating They Are Not Toppers ..................... 19

        5.   Ecos/Grantec's Tri-Folding Mattresses do not Satisfy the Topper
             Exclusion and are Therefore In-Scope Merchandise ........................................ 21

    B.   Foam Mattress Floor Sofas Do Not Satisfy The Requirements Of The
         Multifunctional Furniture Exclusion Because These Products Do Not Have Any
         Furniture Framing ............................................................................................ 22

VI.  CONCLUSION ................................................................................................... 25

## Table of Authorities

Page(s)

Court Decisions

*Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141 (Ct. Int'l Trade 2000) .................................................................................................................8

*Ceramark Tech., Inc. v. United States*, 11 F. Supp. 3d 1317 (Ct. Int'l Trade 2014) ........................

*Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938) ....................................................8

*Eckstrom Industries, Inc. v United States*, 254 F.3d 1068, 1073 (Fed. Cir. 2011) .................24-25

*Jiaxing Brother Fastener Co., Ltd. v. United States*, 428 F. Supp. 3d 1364 (Ct. Int'l Trade 2020) ...............................................................................................8

*Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Ins. Co.*, 463 ................9

*Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371 (Fed. Cir. 2007) .........................9

*Polites v. United States*, 755 F. Supp. 2d 1352 (Ct. Int'l Trade 2011) ...................................24-25

*Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951) .................................................8


Administrative Determinations

*Mattresses From Indonesia: Final Results of Antidumping Duty Administrative Review; 2020-2022*, 88 Fed. Reg. 85240 (Dec. 7, 2023) ..................................................... *passim*

*Mattresses from Indonesia: Preliminary Results of Antidumping Duty Administrative Review; 2020-2022*, 88 Fed. Reg. 37027 (June 6, 2023) ................................................................3

Other Administrative Determinations

*Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam*, Inv. Nos. 701-TA-645 and 731-TA-1495-1501 (Final), USITC Pub. 5191 (May 2021) ..........................................................................................3

Pursuant to Rule 56.2 of the Rules of the US Court of International Trade, Plaintiffs Brooklyn Bedding, LLC, Corsicana Mattress Company, FXI, Inc., Kolcraft Enterprises Inc., Leggett & Platt, Incorporated, International Brotherhood of Teamsters, United Steel Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, (hereinafter, "Plaintiffs" or "Petitioners") respectfully submit this memorandum of points of law and fact in support of their motion for judgment on the agency record.

In the first administrative review of the antidumping duty order on mattresses from Indonesia ("*AD Order*"), the Department of Commerce ("the Department") held that two categories of multifunctional mattresses (*i.e.,* tri-folding mattresses and foam mattress floor sofas) satisfied the requirements of exclusions contained in the *AD Order*, and therefore did not require mandatory respondents PT Ecos Jaya Indonesia and PT Grantec Jaya Indonesia ("Ecos/Grantec") to report sales and cost data associated with these mattresses. As discussed below, however, the Department's determination is based on a fundamental misreading of the relevant exclusions and failed to establish that Ecos/Grantec's tri-folding mattresses and foam mattress floor sofas satisfied each criterion of the relevant exclusions. Accordingly, because the Department's *Final Results* are not supported by substantial evidence and are otherwise not in accordance with law, Plaintiffs request that this Court remand this matter to the Department, consistent with the arguments below.

I.    **STATEMENT PURSUANT TO RULE 56.2**

A.    **Administrative Determination Under Review**

Plaintiffs are domestic producers of mattresses and have brought this action to challenge the Department's final results of administrative review of the antidumping duty order on mattresses from Indonesia. *Mattresses From Indonesia: Final Results of Antidumping Duty*

*Administrative Review; 2020-2022*, 88 Fed. Reg. 85240 (Dec. 7, 2023) ("*Final Results*") (P.R. 241) and accompanying Issues and Decision Memorandum ("IDM") (P.R. 233)[1]

### B. Issues Presented for Review

1. The *AD Order* contains an exclusion for certain mattress toppers, which are defined as removable bedding accessories that are (1) 4 inches in height or less, and (2) designed and used as a supplement to a mattress by providing an additional layer of support that is placed on top of a mattress. Where record evidence demonstrated that Ecos/Grantec produce and market tri-folding mattresses as mattresses and not as a supplement to a mattress, and whereas the Department has previously found tri-folding mattresses to be in-scope merchandise, was the Department's determination that Ecos/Grantec's tri-folding mattresses satisfied the mattress topper exclusion supported by substantial evidence?

2. The scope of the *AD Order* contains an exclusion for certain multifunctional furniture, which requires, *inter alia*, that the mattress component of the furniture be upholstered, integrated into the design and construction of, and inseparable from, the furniture framing. Where record evidence demonstrated that Ecos/Grantec's foam mattress floor sofa is simply a collection of foam pads encased in a cover with no furniture framing, was the Department's finding that the foam mattress floor sofa satisfied the requirements of the multifunctional furniture exclusion supported by substantial evidence?

### C. Request for Relief

Plaintiffs request that this Court hold the Department's interpretation and construction of the mattress topper and multifunctional furniture exclusions is unlawful and unsupported by substantial evidence and to remand the Department's determination with instruction to find Ecos/Grantec's multifunctional mattresses to be in-scope merchandise.

## II. STATEMENT OF THE FACTS

Mattresses come in a wide variety of configurations. A mattress "core" may be made up of metal innerspring coils of various types, foam of various densities, or a combination of innersprings and foam. Mattresses are also produced in a wide range of sizes, from the standard

---

[1] All citations to the administrative record take the form "P.R.___" or "C.R.___".

sizes used in a traditional bed (*e.g.*, twin, queen, king, etc.) to more narrow and specific sizes for niche products like RV mattresses or tri-folding mattresses. Mattresses can also be packaged flat and delivered in plastic or may be compressed, rolled, and delivered to the customer as a mattress in a box. Although mattresses are generally used as a sleeping surface, a mattress can be produced for more multifunctional use, such as tri-folding mattresses that include multiple foam cores connected to each other by a fabric cover and that are portable, foldable, and storable. *See, e.g., Mattresses from Cambodia, China, Indonesia, Malaysia, Serbia, Thailand, Turkey, and Vietnam*, Inv. Nos. 701-TA-645 and 731-TA-1495-1501 (Final), USITC Pub. 5191 (May 2021) at 9, I-13 – I-14, I-21.

In the first administrative review of the *AD Order*, the Department selected affiliated Indonesian producers Ecos/Grantec as a mandatory respondent. *Mattresses from Indonesia: Preliminary Results of Antidumping Duty Administrative Review; 2020-2022*, 88 Fed. Reg. 37027 (June 6, 2023) ("*Preliminary Results*") (P.R.189) and accompanying Decision Memorandum ("PDM") (P.R. 175) at 2. Ecos/Grantec reported that during the POR it had sales to the United States of traditional mattresses as well as sales of tri-folding mattresses and foam mattress floor sofas. *See* Letter from Ecos/Jaya, "Section A Questionnaire Response" (Sept. 14, 2022) ("AQR") (P.R. 40-43) (C.R. 22-43) at Exhibit A-18 (PDF 930, PDF 935); Letter from Ecos/Grantec, "Sections C and D Questionnaire Responses and Errata to Section A Questionnaire Response" (Oct. 3, 2022) ("C-DQR") (P.R. 61-63) (C.R. 94-408) at Exhibit C-3-A. In reporting its sales of subject merchandise, however, Ecos/Grantec removed all sales of its tri-folding mattresses and foam mattress floor sofas from its US sales database. Although Ecos/Grantec did not dispute that both products were mattresses as defined in the *AD Order*, Ecos/Grantec asserted that both types of multifunctional mattresses satisfied the requirements of

exclusions contained in the *AD Order* and were therefore properly excluded as non-subject

merchandise. *See* C-DQR at C-7 and Exhibit C-3-A; Letter from Ecos/Grantec, "Response to

Petitioners' Section C Rebuttal Factual Information" (Oct. 24, 2022) ("CQR RFI Response")

(P.R. 99) (C.R.__) at 2-4; Letter from Ecos/Grantec, Responses to the Department's December

7th Supplemental Sections A and C Questionnaire and December 13th Supplemental Sections A,

D, and E Questionnaire" (Jan. 10, 2023) ("Supp. ACDE QR") (P.R. 123-128) (C.R. 134) at S-5 –

S-8.

Specifically, Ecos/Grantec reported that it produced and sold tri-folding mattresses to the

United States during the POR, an example of which is shown below:



*Source*: AQR at Exhibit A-18 (PDF 931)

Ecos/Grantec asserted that its tri-folding mattress satisfied the "mattress topper" exclusion

outlined in the *AD Order*, which is as follows:

> Additionally, also excluded from the scope of this Order are "mattress toppers." A
> "mattress topper" is ***a removable bedding accessory that supplements a mattress
> by providing an additional layer that is placed on top of a mattress***. Excluded
> mattress toppers have a height of four inches or less. IDM at 4 (emphasis supplied).

Throughout the proceeding, Mattress Petitioners contested Ecos/Grantec's assertion that

its tri-folding mattresses satisfied the mattress topper exclusion. *See, e.g.*, Letter from Mattress

Petitioners, "Mattress Petitioners' Pre-Preliminary Comments—ECOS/GRANTEC" (May 4,

2023) (P.R. 164-165) (C.R. 334-337) at 16-27; Letter from Mattress Petitioners, "Mattress Petitioners' Case Brief" (Oct. 25, 2023) ("Case Br.") (P.R. 223) (C.R. 493) at 21-38. Not only had the Department explicitly found tri-folding mattresses to be in-scope merchandise in the underlying investigation, but Ecos/Grantec referred to these products as mattresses in the normal course of business, including in its product code designations and sales documentation. *See* Case Br. at 29-32. More importantly, Ecos/Grantec's own product descriptions identified its tri-folding mattresses as mattresses, not toppers. For example, Ecos/Grantec's product catalogue explained that its tri-folding mattresses were "the ideal solution to temporary sleeping accommodations" and were "{p}erfect for unexpected sleep over guests, dorm rooms, camping, traveling or car trips," but never described the function or use of its tri-folding mattresses as a "removable bedding accessory that supplements a mattress." *Id.* at 30-32.

   Additionally, Ecos/Grantec produced and sold foam mattress floor sofas to the United States during the POR, an example of which is shown below:



*Source*: AQR at Exhibit A-18 (PDF 935)

Ecos/Grantec asserted that its foam mattress and floor sofa satisfied the "multifunctional furniture" exclusion, which is as follows:

Also excluded is certain multifunctional furniture that is convertible from seating to sleeping, regardless of filler material or components, ***where that filler material or components are upholstered, integrated into the design and construction of, and inseparable from, the furniture framing***, and the outermost layer of the multifunctional furniture converts into the sleeping surface. Such furniture may, and without limitation, be commonly referred to as "convertible sofas," "sofabeds," "sofa chaise sleepers," "futons," "ottoman sleepers" or a like description. IDM at 4 (emphasis supplied).

Throughout the proceeding, Mattress Petitioners contested Ecos/Grantec's assertion that its foam mattress floor sofa satisfied the multifunctional furniture exclusion. *See, e.g.*, Case Br. at 23-26. In particular, Mattress Petitioners stressed that Ecos/Grantec's foam mattress floor sofa was simply a collection of foam pads encased in covers (*i.e.*, a mattress) that was not integrated into, and inseparable from, any furniture framing because the foam mattress floor sofas have no furniture framing. *Id.* Consequently, the second criterion of the multifunctional furniture was not satisfied and therefore the foam mattress and floor sofa constituted in-scope merchandise. *Id.*

In the *Final Results*, the Department held that Ecos/Grantec's tri-folding mattresses and foam mattress floor sofas satisfied the mattress topper and multifunctional furniture exclusions, respectively. IDM at Comment 3. The Department found Ecos/Grantec's tri-folding mattresses satisfied the requirements of the mattress topper exclusion because Ecos/Grantec sometimes referred to the tri-folding mattresses as toppers and described them as portable and removable. *Id.* The Department also found Ecos/Grantec's foam mattress floor sofas satisfied the requirements of the multifunctional furniture exclusion because the product was one integrated unit consisting of foam and a cover that served as both mattress and frame. *Id.* As discussed below, the Department's interpretation of the mattress topper and multifunctional furniture exclusions is inconsistent with its scope analysis from the underlying investigation, record evidence, and common sense.

### III.     SUMMARY OF THE ARGUMENT

This appeal concerns the Department's analysis and interpretation of two exclusions contained in the *AD Order*, specifically the "mattress topper" and "multifunctional furniture" exclusions. In the underlying investigation, the Department explained that "when products that would otherwise be subject to the scope do not meet the exclusion requirements as outlined in the scope, they do not qualify for the exclusion and are considered within the scope of the investigation." *See* Letter from Mattress Petitioners, "Mattress Petitioners' Rebuttal Factual Information Submitted In Response to Ecos/Grantec's Section C Questionnaire Response" (Oct. 17, 2022) ("CQR RFI") (P.R. 71) at Exhibit 1 ("*Final Scope Memo*") at 9. In the *Final Results*, the Department found Ecos/Grantec's tri-folding mattresses and foam mattress floor sofas satisfied the mattress topper and multifunctional furniture exclusions, respectively, even though neither product satisfied all the requirements of the respective exclusions.

With respect to tri-folding mattresses, the Department ignored its scope analysis from the underlying investigation in which it found tri-folding mattresses were in-scope merchandise. Moreover, record evidence demonstrated that Ecos/Grantec produce and advertise its tri-folding mattresses as mattresses, with uses and functions typically associated with mattresses. Record evidence further demonstrates that Ecos/Grantec's tri-folding mattresses are produced in unique sizes rather than sizes that correspond to traditional mattresses (*e.g.*, twin, queen, etc.), further demonstrating that they are not designed to be used as mattress toppers. Put simply, the mere fact that the tri-folding mattresses are foldable and portable does not mean they are mattress toppers.

With respect to Ecos/Grantec's foam mattress floor sofas, the Department likewise ignored its scope analysis from the underlying investigation in which it confirmed that the multifunctional furniture exclusion applies to furniture, not foldable mattresses with no furniture

framing. Moreover, the Department's interpretation of the multifunctional furniture exclusion erases the distinction between the mattress component of the multifunctional furniture and the furniture framing, which is inconsistent with the plain language of the exclusion and renders the multifunctional furniture exclusion meaningless. Put simply, the mere fact that the foam mattress floor sofas are foldable and can be placed on the ground does not mean they are multifunctional furniture.

## IV.    STANDARD OF REVIEW

The court will hold Commerce's determinations unlawful where they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law."  19 U.S.C. § 1516a(b)(l)(B)(i). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). "If Commerce fails 'to consider or discuss record evidence, which, on its face, provides significant support for an alternative conclusion{,} {Commerce's determination} is unsupported by substantial evidence.'" *Jiaxing Brother Fastener Co., Ltd. v. United States*, 428 F. Supp. 3d 1364, 1381 n.35 (Ct. Int'l Trade 2020) (quoting *Ceramark Tech., Inc. v. United States*, 11 F. Supp. 3d 1317, 1323-24 (Ct. Int'l Trade 2014). "{I}t is also well-established that Commerce's total failure to consider or discuss record evidence which, on its face, provides significant support for an alternative conclusion renders the Department's determination unsupported by substantial evidence." *Allegheny Ludlum Corp. v. United States*, 112 F. Supp. 2d 1141, 1165 (Ct. Int'l Trade 2000).

In examining an agency's decision to depart from its established practice, a reviewing court examines whether the agency provided a reasoned basis for doing so. "When an agency decides to change course…it must adequately explain the reason for a reversal of policy." *Nippon Steel Corp. v. U.S. Int'l Trade Comm'n*, 494 F.3d 1371, 1377 n.5 (Fed. Cir. 2007); *see also Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Ins. Co.*, 463 U.S. 29, 57 (1983) ("{A}n agency changing its course must supply a reasoned analysis.") (internal quotation and citation omitted).

V.    **ARGUMENT**

A.  **Tri-Folding Mattresses Are Not Mattress Toppers, And The Department's Determination To The Contrary Is Not Supported By Substantial Evidence**

The Department's determination in the *Final Results* that Ecos/Grantec's tri-folding mattresses satisfied the requirements of the mattress topper exclusion, and therefore constitute non-subject merchandise, is inconsistent with its scope analysis from the underlying investigation and is not supported by record evidence. In finding that the tri-folding mattresses satisfied the requirements of the mattress topper exclusion, the Department relied on three facts: (1) Ecos/Grantec's tri-folding mattresses were all 4 inches or less, (2) Ecos/Grantec sometimes refer to its tri-folding mattresses as mattress toppers, and (3) Ecos/Grantec advertise its tri-folding mattresses as portable and removable. *See* IDM at Comment 3. None of these facts, however, demonstrate that Ecos/Grantec's tri-folding mattresses are mattress toppers because none of them demonstrate that the tri-folding mattress is designed as, or is used as, a supplement to an existing mattress. Instead, Ecos/Grantec's product descriptions and product specifications unequivocally demonstrate these products are designed to be used as multifunctional mattresses. Accordingly, the Court should find that Ecos/Grantec's tri-folding mattresses do not satisfy the requirements of the mattress topper exclusion and are therefore in-scope merchandise.

9

### 1. The Department Previously Found Tri-Folding Mattresses to be In-Scope Merchandise During the Underlying Investigation

In the underlying investigation concerning mattresses from Indonesia, the Department considered whether tri-folding mattresses were in-scope merchandise and expressly held that the "trifold memory foam mattress satisfies the plain language of the scope and does not meet the exclusionary requirements." *See* CQR RFI at Exhibit 1 (Final Scope Memo) at Comment 2. Specifically, a company in that proceeding (Night & Day) produced a Murphy Cabinet Bed that contained a separable trifold mattress component. The 6-inch trifold mattress is shown below:



*Source*: CQR RFI at Exhibit 2 (Night & Day Letter) at Attachment.

The Department observed that the "mattress includes a core (*i.e.*, three segments of foam) and ticking, satisfying the product description established in the scope of the investigations." *Id.* The Department also found that the tri-folding mattress did not satisfy any express exclusion (*e.g.,* the futon or multifunctional furniture exclusion) and therefore the scope "clearly covers Night &

Day's mattresses." *Id.*

Notwithstanding its analysis from the underlying investigation, in the *Final Results* the Department reversed its position and found that Ecos/Grantec's tri-folding mattress was appropriately excluded as non-subject merchandise. *See* IDM at Comment 3. But as shown in the picture below, Ecos/Grantec's tri-folding mattress is the same product that the Department analyzed during the investigation:



*Source*: AQR at Exhibit A-18 (PDF 931)

The only difference between Ecos/Grantec's tri-folding mattress and the tri-folding mattress analyzed in the underlying investigation is the height; Night & Day's tri-folding mattress had a height of 6 inches whereas Ecos/Grantec's tri-folding mattresses are all 4 inches or less. *Compare* IDM at Comment 3 and AQR at Exhibit A-18, *with* CQR RFI at Exhibit 2. Although the Department cited this fact in support of its analysis in the *Final Results*, height alone is not dispositive because mattresses can also be 4 inches. Indeed, the *AD Order* explains that the scope covers "all types of youth and adult mattresses…regardless of size and size description." IDM at 4. Put differently, a height of 4 inches or less is a necessary, but insufficient, condition for satisfying the mattress topper exclusion. Insofar as there are no other differences between the tri-folding mattresses analyzed in the underlying investigation and

Ecos/Grantec's tri-folding mattresses, the Department's finding in the *Final Results* that Ecos/Grantec's tri-folding mattresses satisfied the requirements of the topper exclusion is inconsistent with its scope analysis from the underlying investigation and is not supported by substantial evidence.

### 2. Mattresses that are Portable and Foldable are Still Mattresses

The Department's determination that Ecos/Grantec's tri-folding mattresses satisfied the mattress topper exclusion was grounded, in part, on its assertion that "these products are described as 'toppers' {which} means that they are portable and removable" and "can be folded for storage in a closet when not in use." IDM at Comment 3. The Department's analysis, however, is both factually incorrect and legally irrelevant insofar as these descriptions apply equally to mattresses as well as toppers. Moreover, record evidence demonstrates that Ecos/Grantec's tri-folding mattresses are designed and marketed to be used as mattresses, not mattress toppers, as evidenced by its own product brochure that identifies various uses and functions of its tri-folding mattresses, none of which are related to mattress toppers (*i.e.,* a "removable bedding accessory that supplements a mattress by providing an additional layer that is placed on top of a mattress").

*First*, Ecos/Grantec do not describe its tri-folding mattresses as a "removable bedding accessory ***that supplements a mattress by providing an additional layer that is placed on top of a mattress***." IDM at 4. This makes sense when one views a picture of the tri-folding mattress:



*Source*: AQR at Exhibit A-18 (PDF 929)

The assertion that anyone would place this 4-inch tri-folding mattress ***on top of an existing***

***mattress as a supplement to an existing mattress and to provide an additional layer of support***

strains credulity.

Indeed, Ecos/Grantec provide the following product descriptions and uses for each of its

tri-folding mattresses, all of which relate to mattresses and not toppers:

- **Product Code 04TM01S**—"the ideal option for visitors, sleepovers, car trips, camping or dorm room bed. Portable and comfortable mattress, no pain in the back or next when people sleep on it. Complete with supportive memory foam mattress providing soothing sleeping." Also described as "Fold up for an extra floor seating" or "easily fold it up for storage in a closet in seconds when not in use." AQR at Exhibit A-18 (PDF 929).

- **Product Codes 04TM02S and 04TMF01S**—"Complete with supportive memory foam mattress providing soothing sleeping or leisure;" "ideal solution to temporary sleeping accommodations. Perfect for unexpected sleep over guests, dorm rooms, camping, traveling or car trips. Also great option for extra floor seating;" "portable and comfortable mattress, no pain in the back or neck when people sleep on it;" easily fold it up for storage in a closet in seconds when not in use." AQR at Exhibit A-18 (PDF 930).

- **Product Code 04TM03S**—"ideal option for visitors, sleepovers, car trips, camping or dorm room bed. Portable and comfortable mattress, no pain in the back or neck when people sleep on it. Complete with supportive memory foam providing soothing sleeping;" "fold up for an extra floor seating;" "easily fold it up for storage in a closet in seconds when not in use." AQR at Exhibit A-18 (PDF 933).

- **Product Code 04TM04S**—"ideal option for visitors, sleepovers, car trips, camping or dorm room bed. Portable and comfortable mattress, no pain in the back or neck when people sleep on it. Complete with supportive memory foam mattress providing soothing sleeping." AQR at Exhibit A-18 (PDF 934).

- **Product Code 04TM02T**—"ideal option for visitors, sleepovers, car trips, camping or dorm room bed. Portable and comfortable mattress, no pain in the back or neck when people sleep on it. Complete with supportive memory foam mattress providing soothing sleeping." Also described as "Fold up for an extra floor seating" and "easily fold it up for storage in a closet in seconds when not in use." AQR at Exhibit A-18 (PDF 931).

- **Product Code 04TM02X**— "ideal option for visitors, apartment dwellers, college dorms, also great for car trips, video gaming, reading book, watching TV or camping. With supportive high density foam providing soothing leisure or sleeping." "Used as sleep mattress or floor mat" "Used as sofa: Fold to a cosy couch, perfect for lounging or gaming. 4 inches off the floor is suitable for most people" "Fold it up in seconds for storage in a closet or under bed when not in use." AQR at Exhibit A-18 (PDF 932).

- Although product codes [                              ] are not identified in the product brochure, the specification sheets provided by Ecos/Grantec make clear that all three products are identical to its other tri-folding mattresses. *See* CQR RFI Response.

In contrast, Ecos/Grantec sell actual mattress toppers and explicitly identify the use of these products as a supplement to an existing mattress. For example, Ecos/Grantec market 4 models of a "Gel Memory Foam Air Flow Topper" that it describes as an "*{i}deal choice to improve an existing mattress*" that "fits well under any standard fitted sheet." AQR at Exhibit A-18 (PDF 984-987) (emphasis supplied). This product is shown below:



*Source*: AQR at Exhibit A-18 (PDF 987).

Ecos/Grantec also market and sell different types of a "2.5 Inch Gel Foam Topper," which it shows is intended to be placed on top of an existing mattress:



*Source*: Ecos/Grantec AQR at Exhibit A-18 (PDF 981)



*Source*: Ecos/Grantec AQR at Exhibit A-18 (PDF 980)

*Second*, the Department's assertion that Ecos/Grantec's tri-folding mattresses "are portable and removable" and "can be folded for storage in a closet when not in use," a "description not found in the product brochure for mattresses" is both factually incorrect and legally irrelevant. As an initial matter, Ecos/Grantec refer to its tri-folding mattresses as a "Tri-Folding Memory Foam Mattress" and a "{p}ortable and comfortable mattress" that "{e}asily

fold{s} up for storage in a closet in seconds when not in use." AQR at Exhibit A-18 (PDF 930); *see also id.* (noting that "our advanced compressed package technology delivers the mattress in a box directly to your front door"). Moreover, the mattress topper exclusion does not require that a product be portable, foldable, or removable; rather, the product must ***function as a supplement to a mattress by providing an extra layer of support***. *See* IDM at 4. As shown above, Ecos/Grantec does not identify such a function or use for any of its tri-folding mattresses in its product brochure or product specification sheets, but does identify those functions and uses for its actual mattress toppers. *Compare* AQR at Exhibit A-18 (PDF 929-934), *with id.* at Exhibit A-18 (PDF 979-987).

In sum, Ecos/Grantec's tri-folding mattresses function as, and are designed to be used as, multifunctional mattresses. Ecos/Grantec do not market or advertise its tri-folding mattresses as mattress toppers, as evidenced by its own product brochure. In contrast, Ecos/Grantec do produce mattress toppers and advertise them as such (*i.e.*, as supplements to existing mattresses). Accordingly, the mere fact that Ecos/Grantec's tri-folding mattresses are portable and removable does not render them mattress toppers, contrary to the Department's assertion in the *Final Results*.

### 3. Ecos/Grantec's Inconsistent Product Labeling Does Not Support Finding its Tri-Folding Mattresses Satisfy the Requirements of the Mattress Topper Exclusion

The Department's determination that Ecos/Grantec's tri-folding mattresses satisfied the mattress topper exclusion was grounded, in part, on the fact that Ecos/Grantec sometimes refers to its tri-folding mattresses as mattress toppers. *See* IDM at Comment 3 ("Each of the product codes cited by the petitioners are referred as 'toppers' in the product brochure and specification sheets."). A product label, however, is not relevant to whether such product satisfies the

requirements of a scope exclusion. Moreover, Ecos/Grantec's product labeling is inconsistent and often identifies the same product as a tri-folding mattress and a tri-folding topper. Critically, however, Ecos/Grantec admits that in the normal course of business it refers to its tri-folding mattresses as mattresses, which is evidenced by its own product brochure and sales documentation.

*First*, the Department explained in the underlying investigation that a "product label…does not automatically qualify a product for exclusion, simply based on its name. To be excluded, it must, in fact, meet all of the requirements of the exclusion." CQR RFI at Exhibit 1 (*Final Scope Memo*) at 8. Accordingly, the fact that Ecos/Grantec sometimes refer to its tri-folding mattresses as toppers is not relevant to whether such products satisfy the specific requirements of the mattress topper exclusion.

Moreover, even if this Court finds that a product label is relevant to whether a product satisfies an exclusion identified in the scope, the Department failed to address record evidence demonstrating that Ecos/Grantec admit that in the normal course of business they identify tri-folding mattresses as mattresses. *See, e.g.,* Supp. ACDE QR at S-6 ("Although, in the normal course of business, Ecos/Grantec often refers to such 'mattress toppers' as 'tri-folding mattresses' because they relate to that product category..."). In fact, every product code for tri-folding mattresses in Ecos/Grantec's product brochure is referred to as a tri-folding mattress:

- Product Code 04TM01S is described as a "4 inch Tri-Folding Memory Foam Mattress" and a "portable and comfortable mattress," as well as a "Tri-fold Topper." AQR at Exhibit A-18 (PDF 929).

- Product Code 04TM02S is described as a "4 inch Tri-Folding Memory Foam Mattress" and a "portable and comfortable mattress," and that Ecos/Grantec's compressed package technology "delivers the mattress in a box directly to your front door." AQR at Exhibit A-18 (PDF 930).

- Product Code 04TM02T is described as a "4 inch Tri-folding Memory Foam Mattress" and a "portable and comfortable mattress…complete with supportive memory foam mattress providing soothing sleeping." AQR at Exhibit A-18 (PDF 931).

- Product Code 04TM02X is described as a "4 inch Tri-Fold Foam Folding Mattress and Sofa Bed" that is "used as {a} sleep mattress or floor mat." AQR at Exhibit A-18 (PDF 932).

- Product Codes 04TM03S/04TM04S is described as a "portable and comfortable mattress…complete with supportive memory foam mattress providing soothing sleeping." AQR at Exhibit A-18 (PDF 933).

Furthermore, and consistent with its own records and product coding, Ecos/Grantec also refer to product codes with a [      ] as "tri-folding mattresses" on its [                    ]. For example, in its questionnaire responses Ecos/Grantec provided two sample sales (CEP inventory) and associated [                    ]. *See* Supp. ACDE QR at Exhibit SC-4. For Sample 1, the [

                    ]. *Id.* at Exhibit SC-4 (PDF 107). The [

                    ]." *Id.* at Exhibit SC-4 (PDF 108). Similarly, for Sample 2, the [

                    ]." *Id.* at Exhibit SC-4 (PDF 110).

In sum, the Department's assertion that Ecos/Grantec's tri-folding mattresses satisfied the mattress topper exclusion because Ecos/Grantec sometimes refer to these products as toppers is inconsistent with its statement in the underlying investigation that a "product label…does not automatically qualify a product for exclusion." CQR RFI Exhibit 1 (*Final Scope Memo*) at 8. The Department's determination is also undermined by the fact that Ecos/Grantec inconsistently refer to its tri-folding products as mattresses and toppers. However, record evidence, including

Ecos/Grantec's product brochure and sales documentation, demonstrate that Ecos/Grantec primarily refer to these products as tri-folding mattresses, not mattress toppers. Accordingly, Ecos/Grantec's product labeling does not support the Department's determination that Ecos/Grantec's tri-folding mattresses qualify for the mattress topper exclusion.

### 4. Ecos/Grantec's Tri-Folding Mattresses Are Not Produced To Traditional Mattress Sizes, Demonstrating They Are Not Toppers

Ecos/Grantec's tri-folding mattresses are produced to sizes that do not correspond to traditional mattress sizes (*e.g.*, twin, queen, king, etc.), demonstrating that the tri-folding mattresses cannot function as a supplement to an existing mattress in any meaningful sense. In contrast, Ecos/Grantec do sell mattress toppers that correspond to traditional mattresses sizes, confirming that Ecos/Grantec's tri-folding mattresses are not the same kind of product as its mattress toppers. That Ecos/Grantec's tri-folding mattresses do not conform to traditional mattress sizes, and thus would not fit on top of existing mattresses, further demonstrates that Ecos/Grantecs' tri-folding mattresses do not satisfy the requirements of the mattress topper exclusion.

Ecos/Grantec's product brochure and product specification sheets provide dimensions for all of its traditional mattresses, tri-folding mattresses, and mattress toppers. *See* AQR at Exhibit A-18 (PDF 916-928 for mattresses; PDF 929-934 for tri-folding mattresses; and PDF 979-987 for toppers); CQR RFI Response at Attachment (PDF 14-23). As shown in the table below, Ecos/Grantec produce and sell mattress toppers in sizes that correspond to traditional mattress sizes, demonstrating their use as a "supplement to" an existing mattress:

| Ecos/Grantec's Mattress Topper Sizes | | | |
|---|---|---|---|
| **Product** | **Product Codes** | **Size** | **Dimensions (inches)** |
| 1.5 Inch Topper | 15TP01 | Multiple | Twin—73 x 37 x 1.5<br>Full—73 x 52 x 1.5<br>Queen—78 x 58 x 1.5<br>King—78 x 74 x 1.5 |
| 2 Inch Topper | 02TP03 | Multiple | Twin—73 x 37 x 2<br>Full—73 x 52 x 2<br>Queen—78 x 58 x 2<br>King—78 x 74 x 2 |
| 2 Inch Topper | 02TP02 | Multiple | Twin—75 x 39 x 2<br>Full—75 x 54 x 2<br>Queen—80 x 60 x 2<br>King—80 x 76 x 2 |
| 2.5 Inch Topper | 25TP02<br>25TP03 | Multiple | Twin—75 x 39 x 2.5<br>Full—75 x 54 x 2.5<br>Queen—80 x 60 x 2.5<br>King—80 x 76 x 2.5 |
| 2.5 Inch topper | 25TP04 | Multiple | Twin—73 x 37 x 2.5<br>Full—73 x 52 x 2.5<br>Queen—78 x 58 x 2.5<br>King—78 x 74 x 2.5 |
| 3 Inch Topper | 03TP03<br>03TP04 | Multiple | Twin—73 x 37 x 3<br>Full—73 x 52 x 3<br>Queen—78 x 58 x 3<br>King—78 x 74 x 3 |
| 4 Inch Topper | 04TP02 | | Twin—73 x 37 x 4<br>Full—73 x 52 x 4<br>Queen—68 x 58 x 4<br>King—78 x 74 x 4 |

*Source*: AQR at Exhibit A-18 (PDF 979 – 987) (mattress topper sizes);
*see also id.* (PDF 916-928) (mattress sizes)

In contrast, all ten of Ecos/Grantec's tri-folding mattresses are produced to sizes that do not correspond to traditional mattress sizes.

| Product | Product Code | Size | Dimensions (inches) |
|---------|--------------|------|---------------------|
| Tri-folding Mattress | 04TM01S | Single size | 75 x 25 x 4 |
| Tri-folding Mattress | 04TMB1S | Single size | 75 x 25 x 3.75 |
| Tri-folding Mattress | 04TM02S | Single size | 75 x 25 x 4 |
| Tri-folding Mattress | 04TMF01S | Single size | 75 x 25 x 4 |
| Tri-folding Mattress | 04TM03S | Single size | 75 x 25 x 4 |
| Tri-folding Mattress | 04TM04S | Single size | 75 x 25 x 4 |
| Tri-folding Mattress | 04TM02T | Single size | 78 x 38 x 4 |
| Tri-folding Mattress | 04TM02X | Single size | 78 x 38 x 4 |
| Tri-folding Mattress | 04TM02O | Single size | 75 x 31 x 4 |
| Tri-folding Mattress | 04TM02F | Single size | 73 x 52 x 4 |

*Source*: AQR at Exhibit A-18; CQR RFI Response at Attachment (PDF 14-23)

Ecos/Grantec's admission that it does not produce tri-folding mattresses in sizes that correspond to traditional mattresses is consistent with these products being multifunctional mattresses but is not consistent with them being mattress toppers insofar as they would not fit on top of an existing mattress in any meaningful sense and therefore do "supplement a mattress by providing an additional layer that is placed on top of a mattress." IDM at 4. Accordingly, Ecos/Grantec's product sizing alone demonstrates that the tri-folding mattresses to not satisfy the requirements of the mattress topper exclusion.

### 5. Ecos/Grantec's Tri-Folding Mattresses do not Satisfy the Topper Exclusion and are Therefore In-Scope Merchandise

In sum, the Department's determination that Ecos/Grantec's tri-folding mattresses met the requirements of the mattress topper exclusion is not supported by substantial evidence, is inconsistent with its prior scope analysis of the same product, and betrays common sense. As demonstrated above, Ecos/Grantec's tri-folding memory foam mattresses are nearly identical to the tri-folding mattresses that the Department found to be in-scope merchandise in the underlying investigation. Ecos/Grantec's product brochure, sales documentation, product coding, and product specifications (*i.e.*, size) unequivocally demonstrate that the tri-folding mattresses are designed and used as mattresses, not mattress toppers. The fact that the tri-folding mattresses

are foldable and portable does not make them mattress toppers because tri-folding mattresses can also be foldable and portable. Therefore, this Court should remand this matter to the Department with instructions to require Ecos/Grantec to report sales and cost data associated with sales of these in-scope mattresses.

### B.    Foam Mattress Floor Sofas Do Not Satisfy The Requirements Of The Multifunctional Furniture Exclusion Because These Products Do Not Have Any Furniture Framing

The multifunctional furniture exclusion requires that the mattress component of the multifunctional furniture be "upholstered, integrated into the design and construction of, and inseparable from, the furniture framing." IDM at 4. In the *Final Results*, the Department held that Ecos/Grantec's foam mattress floor sofa satisfied this criterion because the foam mattress floor sofa "is one integrated unit consisting of foam and a cover" (*i.e.*, a mattress) and that the "unit serves as both mattress and frame." *Id.* at Comment 3. But this interpretation of the multifunctional furniture exclusion erases the distinction between the mattress and furniture components, rendering the exclusion meaningless. As discussed below, Ecos/Grantec's foam mattress floor sofa is simply a foldable mattress with no furniture framing and therefore does not satisfy the requirements of the multifunctional furniture exclusion.

The scope of the *AD Order* describes the criteria of the multifunctional furniture exclusion as follows:

> Also excluded is certain **multifunctional furniture** that is convertible from seating to sleeping, regardless of filler material or components, **where that filler material or components are upholstered, integrated into the design and construction of, and inseparable from, the furniture framing**, and the outermost layer of the multifunctional furniture converts into the sleeping surface. Such furniture may, and without limitation, be commonly referred to as "convertible sofas," "sofabeds," "sofa chaise sleepers," "futons," "ottoman sleepers" or a like description. IDM at 4.

The exclusion clearly distinguishes between the "filler material or component," or the mattress,

and the "furniture framing," to which the mattress must be "integrated into the design and construction of, and inseparable from." *Id.*

Ecos/Grantec describe its "8 Inch I Gel Foam Mattress and Floor Sofa" as a "***multi-functional mattress***" that is "{u}sed as {a} sleep mattress or floor mat" and "{e}asily folds from a mattress to a sofa," and provided the following pictures of this product:



*Source*: AQR at Exhibit A-18 (PDF 935-936).

As is clear from the picture, the foam mattress floor sofa is "one integrated unit consisting of foam and cover," IDM at Comment 3, and does not contain any furniture framing—it is simply a foldable mattress.

In the *Final Results*, however, the Department erased the distinction between the mattress and furniture components of multifunctional furniture by asserting that the foam mattress floor sofa "serves as both mattress and frame." *Id.* But the multifunctional furniture exclusion expressly applies to furniture, and clearly distinguishes between the "filler material" (*i.e.*, the mattress component) and the "furniture framing," and requires not just any frame but "furniture framing." *Id.* at 4. Indeed, the "filler material" must be "integrated into" and "inseparable from" the furniture framing. The Department's blending of the "mattress" and "furniture framing" components erase the distinction between "filler material" and "furniture framing." Under the Department's interpretation, the scope exclusion reads as follows: "where the ***filler material or***

23

***components*** are upholstered, integrated into the design and construction of, and inseparable

from the ***{filler material or components}.*** " This interpretation of the scope leads to an absurd

result and renders the multifunctional furniture exclusion meaningless.

Moreover, the multifunctional ***furniture*** exclusion unambiguously applies to ***furniture***,

not foldable mattresses. Indeed, the scope language provides examples of the kind of

merchandise that would be covered by this exclusion (*i.e.*, "convertible sofas," "sofabeds," "sofa

chaise sleepers," "futons," "ottoman sleepers" or a like description). IDM at 4. For example,

Ecos/Grantec produce the following "futon couch bed" or "multi-functional sofa bed:"



*Source*: AQR at Exhibit A-18 (PDF 1051)

This product not only has foam cushions but a "solid wood frame and high quality metal legs,"

which provide the furniture framing to which the foam cushions are attached. AQR at Exhibit A-

18 (PDF 1051). This is the type of product excluded under the multifunctional furniture

exclusion.

In sum, the Department's determination that Ecos/Grantec's foam mattress and floor sofa

satisfied the requirements of the multifunctional furniture exclusion is not supported by

substantial evidence because the product does not have any furniture framing and is not

integrated into, and inseparable from, the furniture framing. Although the Department "has

latitude in interpretating the {*AD Order*}, it may not render parts of the Order 'mere

surplusage.'" *Polites v. United States*, 755 F. Supp. 2d 1352, 1357 (Ct. Int'l Trade 2011) (quoting *Eckstrom Industries, Inc. v United States*, 254 F.3d 1068, 1073 (Fed. Cir. 2011)). But that is precisely what the Department's scope analysis in the *Final Results* did. Put simply, placing a mattress on the floor and designing the mattress to fold in various ways does not make it a sofabed or multifunctional furniture just because you can sit on it. Accordingly, the Court should find that Ecos/Grantec's foam mattress sofa beds do not satisfy the requirements of the multifunctional furniture exclusion and, therefore, are subject merchandise.

## VI.   CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court find the Department's determination that Ecos/Grantec's tri-folding mattresses and foam mattress floor sofas satisfied the requirements for exclusion from the *AD Order* to be unsupported by substantial evidence and remand this matter to the agency consistent with the arguments above.

Respectfully submitted,

/s/ Yohai Baisburd

Yohai Baisburd
Chase J. Dunn
Nicole Brunda

CASSIDY LEVY KENT (USA) LLP
900 19th Street, N.W.
Suite 400
Washington, D.C. 20006
 (202) 567-2300

*Counsel to Brooklyn Bedding, LLC, et al.*

Date:   May 20, 2024

Court. No. 24-00002

### **Certificate of Compliance**

The undersigned hereby certifies that the forgoing submission of "Memorandum of Points of Law and Fact In Support of Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record," filed by Plaintiff, Mattress Petitioners, on May 20, 2024, contains 6444 words, including footnotes, and excluding the table of contents, table of authorities, and signature block, and therefore, complies with the maximum 14,000 word limitation set forth in the Standard Chambers Procedures.

BY: /s/  Yohai Baisburd